1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL EBERLE, et al.,

                                    Plaintiffs,

        v.

JEFF SMITH, et al.,

                                    Defendants.

CASE NO. 07-CV-120 W (WMc)

**ORDER DENYING
RENEWED MOTION TO
COMPEL ARBITRATION**

        On March 26, 2007, Defendants Jeff Smith and dX/dY Voice Processing, Inc. filed a motion to compel arbitration of this dispute. On May 15, the court denied the motion without prejudice. Having conducted discovery on two relevant issues, the defendants now present a renewed motion to compel arbitration. Because Smith and dX/dY have not met their burden to show that a contractual arbitration provision binds Plaintiff Michael Eberle and Paramount International Telecommunications, Inc., the court will **DENY** the motion.

## I.     Background & Legal Standards

On December 11, 2006, Eberle and Paramount filed suit for breach of contract in the San Diego Superior Court.  After removing the case here, Smith and dX/dY counterclaimed for breach of contract and fraud.  The court denied the defendants' motion to compel arbitration for two reasons.  First, a December 2005 email may have superseded the prior contract between the parties.  (Order Denying Mot. to Compel Arb'n at 2–3.)  Second, the agent who signed the original agreement (dated August 15, 2003: the "2003 Agreement") may have lacked authority.  (Id. at 3–5.)  But the court permitted limited discovery on two issues: (1) whether the parties intended to incorporate an arbitration provision in the 2005 email; and (2) whether the agent had authority to sign the 2003 Agreement.

Under the Federal Arbitration Act, courts should uphold contractual arbitration provisions wherever possible.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (describing the FAA as a "declaration of a liberal federal policy favoring arbitration agreements").  Without an *agreement*, however, an arbitration clause has no effect.  Thus, on a motion to compel arbitration, the court must decide whether the agreement to arbitrate is valid and covers the dispute.  See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).


## II.    Discussion

The defendants argue that (1) the 2003 Agreement governs, and the 2005 email exchange merely modified its payment terms, or (2) alternatively, the parties' conduct created an implied contract extending an agreement dated January 1, 2002 (the "2002 Agreement") indefinitely.  Both the 2002 and 2003 agreements included an arbitration provision.  The plaintiffs contend that the 2005 email exchange, together with terms implied from partnership law, governed the entire relationship between the parties.  Because the parties did not intend to incorporate an arbitration provision into their 2005 contract, and they effected a novation, the court will **DENY** the renewed motion.

1    **A.    The terms of the 2005 email exchange do not include arbitration.**

2    To begin, the court must decide whether the parties merely modified an existing

3    contract or substituted a new contract via the 2005 email exchange.  If the 2005 email

4    exchange was a new contract, its terms did not explicitly include mandatory arbitration.

5    Nothing in the series of emails between Eberle and Smith evidences an intent to include

6    such a provision by implication either.  (<u>See</u> Defs.' Notice of Lodgment [NOL] Ex. 7.)

7

8    **B.    The parties intended to substitute, not modify, contractual obligations.**

9    Based on the 2005 emails and surrounding facts, however, the court must

10   conclude that the 2005 email exchange substituted new contractual obligations for

11   old—whatever those may have been.  Eberle and Smith discussed their prior revenue-

12   sharing agreement (<u>id.</u> at 2–3), their expense-sharing agreement (<u>id.</u> at 2, 4), and their

13   joint line of credit (<u>id.</u> at 3–4, 6, 8).  Smith initiated the exchange to remedy actual or

14   perceived breaches of an April 13, 2005 oral agreement in New York (<u>id.</u> at 2, 6).  Smith

15   states and reiterates that he will "forget about" these breaches (<u>id.</u> at 4) but is "NOT

16   willing to 'continue' with the way things are now—period" (<u>id.</u> at 7).  Mainly, the text

17   of the emails relates to Smith's proposals on "how to move forward" (<u>id.</u> at 3–4, 8–9),

18   either continuing their business in a different form or ending it (<u>id.</u> at 7, 8).

19   Regardless of whether the 2003 Agreement was valid, the email exchange

20   forecloses the argument that either party considered that agreement an essential

21   element of a continued business relationship.  Neither party mentions it, refers to it, or

22   even indicates it crossed his mind.  The sole reference to a specific prior agreement—the

23   April 13, 2005 oral agreement in New York—does not establish that the parties

24   intended to incorporate the arbitration clause.  On the contrary, without evidence that

25   the parties discussed arbitration during that conversation, the court must conclude that

26   *the only aspect* of the prior agreement that survived the email exchange was Eberle's

27   (unkept) promise to split the profits in half.  But that is tantamount to concluding the

28   parties agreed to forgive breaches and enter a new contract entirely.

1    *1.    Each email constitutes a valid offer and counteroffer.*

2    Accordingly, the court rejects the defendants' argument that the December 2005

3    email exchange *must* have been a modification because it could not stand alone.  (Def.'s

4    Mem. in Supp. of Mot. to Compel at 7.)   Its terms are sufficiently precise; indeed, at

5    several points, Smith lays out three distinct options he finds agreeable for Eberle to

6    consider.    An offer does not fail simply because it requires extrinsic evidence to

7    interpret.  An offer need only confer a power of acceptance.  Restatement (Second) of

8    Contracts § 24 ("An offer is the manifestation of willingness to enter into a bargain, so

9    made as to justify another person in understanding that his assent to that bargain is

10   invited and will conclude it.").  Smith is abundantly clear that Eberle may choose one

11   of several options, or no option at all.  Accepting the defendants' argument would mean

12   any offer requiring extrinsic evidence to interpret would fail unless the parties were

13   already under contract—an obvious fallacy.

14

15   *2.    The parties' discussion of past breaches suggests an intent to substitute.*

16   Further, Smith states on more than one occasion his belief that Eberle breached

17   the agreement then in force—whatever it may have been—and insists that Eberle has

18   reneged on the 50/50 agreement *all along*: "Anything short of [a 50/50 split] and [he]

19   is just not interested—because that is the deal [they were] supposed to have."  (NOL

20   Ex. 7 at 7.)  Smith "only care[s] about getting [his] share of what [he] and [Eberle]

21   already agreed to."  (Id. at 3.)  Thus, Eberle's consideration for the new contract is, in

22   part, Smith's forbearance, and vice-versa.  According to Eberle: "If you go back to when

23   I made you the offer and calculate what I have put in or what I have taken out from that

24   time forward you will see that I am actually owed more than what I am telling you."  (Id.

25   at 6.) According to Smith: "[I]f we continue together, the 'owed' money is considered

26   paid back . . . . I forget about some and you forget about some."  (Id. at 4.)  Further,

27   Smith does "want to be paid back" before he "moves forward."  (Id.)  The court cannot

28   construe discussion of past material breaches as evidence of mere modification.

**3.    *Smith's willingness to leave the business also suggests an intent to substitute.***

Finally, Smith brings up the possibility of ending the business relationship on numerous occasions.  In the first email, he states that if he doesn't have an answer by Sunday then he will "assume [Eberle] do[es]n't want [their] relationship to continue." (NOL Ex. 7 at 9.)  Also, he states that he is "not willing to continue unless [they] ARE 50/50."  (Id.)  Later, he repeats his demand, as if to prove he does not intend it as an empty threat: "If you decide that you don't like any of the choices—that is fine—it is up to you.  If that is what you decide then my choice will be to end our relationship and walk away.  Things will be tight for us but with my voice mail business, my channel bank business and my real estate dealings we will make it."  (Id. at 3.)

**C.    Factual issues do not preclude denying the motion.**

A court may decide factual issues in deciding a motion to compel arbitration.  See Rosenthal v. Great W. Fin. Secs. Corp., 14 Cal. 4th 394, 406 (1996).  Therefore, the court finds that the parties intended to start afresh.[1]  Having scrutinized the business cash flow, Smith found Eberle in material breach of the 50/50 deal both parties believed they had.  He offered several alternatives to Eberle, on a take-it-or-leave-it basis.  In offering and accepting these terms, both parties agreed to "put the past behind them," i.e., forbear from pursuing one another for the discrepancies, and restructure the cash flow and expense accounting for greater transparency and fairness. But the core—"non-negotiable"—term of the agreement was the 50/50 profit-sharing arrangement.

On these facts, the court cannot construe the exchange as a mere negotiation to modify certain terms.  The parties acknowledged material breaches, altered pricing ("we stop the 25 cents deal because we split it on the front end"), and eliminated expense charges from a line of credit all to agree on one material term—a true 50/50 split.

---

[1] The defendants cite a declaration from George Demakis, an employee of Eberle's company who drafted the purported modification.  (Defs.' Mem. in Supp. at 4 n.15.) The court concludes that testimony of a *non-party drafter* is irrelevant to show Eberle's intent.

1    Under California law, "when a material term in a contract is altered . . . , a new
2    agreement between the parties has been reached."  See Mitchell v. Am. Fair Credit
3    Ass'n, 99 Cal. App. 4th 1345, 1354 (2002) (invalidating an arbitration provision
4    included in a contract modification).

5        On this point, Davies Machinery Co. v. Pine Mountain Club, Inc., 39 Cal. App.
6    3d 18, 26 (1974), does not compare.  There, the material term in the original agreement
7    was a sale, but the purported novation said nothing about the Smiths' title to the
8    equipment.  Consistent with the principle that a new contract results from a modified
9    material term, the court refused to extinguish a material term (the sale) without
10   evidence that the parties intended to modify it.  In other words, the sale was the central
11   object of the prior contract; the payment terms were secondary.  Here, by contrast, the
12   substituted agreement directly alters the central object of the prior contract: the profit-
13   sharing arrangement.  Characterizing the substitution as affecting merely the "manner
14   and timing of payments" misses the point: Smith was prepared to leave because of them.

15       The defendants cite several cases in an effort to persuade the court otherwise.
16   But these cases are unavailing.  Hunt v. Smyth, 25 Cal. App. 3d 807, 818 (1972), for
17   example, does not require clear and convincing evidence of intent to substitute rather
18   than modify; it states that the intent must "clearly appear" while permitting evidence
19   of surrounding facts and circumstances.  Here, the quoted statements of intent to end
20   the business relationship clearly appear, and the surrounding facts and circumstances
21   support the court's finding that the parties intended to create a new contract.  The
22   parties had very recently gone over the accounting records.  (NOL Ex. 7.)  Smith was
23   so dissatisfied with the prior arrangement he had discussed it with a third party,
24   presumably his wife.  (Id. at 7.)  The parties had reduced their agreement to a standard-
25   form contract in the past, but evidently never did so on this occasion, suggesting they
26   consciously omitted the arbitration term.  And the defendants have introduced no
27   evidence that the parties ever discussed arbitration, either during or after negotiations.
28   //

07cv120

1    Columbia Casualty Co. v. Lewis, 14 Cal. App. 2d 64, 72 (1936), is entirely off
2    point.  It requires clear and convincing evidence for an *oral modification* of a *written*
3    *contract*.  Columbia says nothing until the court concludes the later agreement is
4    actually a modification rather than a novation—and only distracts from the issue of
5    intent when (as here) a *written contract* follows a prior written contract.

6    Finally, Fanucchi & Limi Farms v. United Agri Products, 414 F.3d 1075, 1083
7    (9th Cir. 2005), actually erodes the defendants' position.  Fanucchi reasons that even
8    minor changes to a contract may effect a novation if they (a) affect a party's equity in
9    an asset, (b) reduce the principal on a debt, or (c) involve more than a new repayment
10   schedule.  See id. at 1084.  While it is unnecessary to offer an opinion on the parties'
11   status as partners—and thus, their equity stake in any partnership assets—the court
12   emphasizes that *both Eberle and Smith* believed the other owed him money.  Thus, the
13   court must conclude the parties intended to create a new contract in which both agreed
14   not to pursue the other for the entire amount of the debt.  Further, the nature of their
15   business relationship was far more complex than a debtor-creditor relationship.  At a
16   minimum, their novation resulted in sharing at least some expenses and employees, and
17   jointly pursuing litigation against former clients.

18   In short, all available evidence of Smith's contemporaneous intent suggests he
19   wanted to scrap the prior arrangement and move forward on new terms of his choosing.
20   While some evidence may be equivocal (the word "addendum," the phrases "move
21   forward," "I do want to continue with you"), Smith left no doubt that he was unhappy
22   with the status quo and would leave the business if Eberle refused to agree to his terms.
23   The court finds these objective manifestations of intent more persuasive than Smith's
24   self-serving declarations nearly two years later, and more persuasive than the few words
25   and phrases consistent with an intent to modify the agreement in a few particulars.
26   Furthermore, the nature of the transaction defies characterization as new payment
27   terms.  Most important, nothing suggests either party considered the arbitration clause
28   material.  Therefore, the clause did not survive the 2005 email exchange.

1  **III.    Conclusion & Order**

2          For the foregoing reasons, the court hereby **DENIES** the defendants' motion to

3  compel arbitration [Doc. No. 43].

4          **IT IS SO ORDERED.**

5

6

7  DATED:  October 26, 2007

8                                              _____

9                                              Hon. Thomas J. Whelan
                                               United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv120