1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL L. EBERLE, et. al.,              CASE NO. 07-CV-0120 W (WMC)

12                            Plaintiffs,     **ORDER GRANTING**
                                              **DEFENDANTS' MOTION FOR**
13        vs.                                 **STAY PENDING APPEAL (Doc.**
                                              **No. 61.)**
     JEFF SMITH et. al.,
14
                             Defendants.
15

16
            On January 18, 2007 Defendants Jeff Smith, et. al. ("Defendant") removed this
17
     case from San Diego Superior Court, which alleged breach of contract and sought
18
     accounting and contribution by Plaintiffs Michael L. Eberle, et. al. ("Plaintiffs").  (Doc.
19
     No. 1.)  On May 15, 2007 the Court denied Defendants' motion to compel arbitration
20
     and allowed limited discovery on whether the parties were bound to arbitration.  (Doc.
21
     No. 30.)  On July 24, 2007 Defendants renewed their motion to compel arbitration, and
22
     on October 26, 2007 the Court denied Defendants' renewed motion.  (Doc. Nos. 43,
23
     55.)  On November 20, 2007 Defendants filed an interlocutory appeal as to the order
24
     denying the renewed arbitration motion.  (Doc. No. 60.)  Pending before the Court is
25
     Defendants' motion to stay the case pending the outcome of the interlocutory appeal.
26
     (Doc. No. 61.)  The Court decides the matter on the papers submitted and without oral
27
     argument.  See S.D. Cal. Civ. R. 7.1(d.1).  For the following reasons, Defendants'
28
     motion to stay is **GRANTED**. (Doc. No. 61.)

07cv0120W

1     I.    <u>BACKGROUND</u>

2       A full recitation of the facts and circumstances underlying this lawsuit is not

3 necessary here, and the Court will simply review the procedural history giving rise to the

4 present motion.

5       On December 11, 2006 Plaintiff Eberle filed suit for breach of contract in San

6 Diego Superior Court against Defendant Smith. (Doc. No. 1.) On January 25, 2007,

7 after removing to this Court, Defendant Smith (along with his company dX/dY Voice

8 Processing, Inc.) counterclaimed for breach of contract, fraud, and other claims. (Doc.

9 No. 6.)

10       On March 26, 2007 Defendants moved to compel arbitration, arguing that prior

11 agreements between the parties provided arbitration as the sole means to settle the

12 claims at issue. (Doc. No. 18.) On May 15, 2007 the Court denied Defendants' motion

13 to compel for two reasons. First, a December 2005 email may have superseded the prior

14 2002 and 2003 Agreements between the parties, which had contained arbitration

15 clauses. (*Order Den. Mot. to Compel Arb'n* 2–3.) Second, the agent who signed the

16 2003 Agreement may have lacked authority. (*Id.* 3–5.) However, the Court permitted

17 limited discovery on two issues: (1) whether the parties intended to incorporate an

18 arbitration provision in the December 2005 emails; and (2) whether the agent had

19 authority to sign the 2003 Agreement. (*Id.*)

20       On July 24, 2007, after conducting the limited discovery, Defendants renewed

21 their motion to compel arbitration. (Doc. No. 43.) On October 26, 2007 the Court

22 again denied the motion to compel, finding that the December 2005 email exchange

23 was indeed a new contract that superseded all other agreements and did not evidence

24 an intent to include an arbitration provision. (*Order Den. Renewed Mot. to Compel Arb'n*

25 2–7.) On November 20, 2007 Defendants exercised their right under 9 U.S.C.

26 § 16(a)(1)(B) to immediately appeal the Court's October 26, 2007 Order denying

27 Defendants' renewed motion to compel arbitration.

28       On December 17, 2007 Defendants moved to stay this action pending the

1  outcome of their interlocutory appeal.  (Doc. No. 61.)  On January 14, 2008 Plaintiffs

2  timely opposed, and on January 18, 2008 Defendants replied.  (Doc. Nos. 66, 67.)

3

4  **II.    LEGAL STANDARD**

5        The Federal Arbitration Act (FAA) reflects a strong federal policy favoring

6  arbitration.  9 U.S.C. § 16(a); <u>A.G. Edwards & Sons, Inc. v. McCollough</u>, 967 F.2d

7  1401, 1404 n. 2 (9th Cir. 1992).  To further this federal policy, section 16 of the FAA

8  "endeavors to promote appeals from orders barring arbitration and limit appeals from

9  orders directing arbitration."  <u>Sanford v. Memberworks, Inc.</u>, 483 F.3d 956, 961 (9th

10 Cir. 2007) (quoting <u>Bushley v. Credit Suisse First Boston.</u>, 360 F.3d 1149, 1153 (2d. Cir.

11 2004)).  Accordingly, under the FAA, a party may immediately appeal a court order

12 denying a motion to compel arbitration.  9 U.S.C. § 16(a).  This ensures that the issue

13 of whether a dispute is to be resolved through arbitration is decided before excess time,

14 money, and judicial resources are spent in litigation.  <u>C.B.S. Employee Federal Credit</u>

15 <u>Union v. Donaldson</u>, 716 F.Supp. 307, 310 (W.D. Tenn. 1989).

16       The system created by the FAA allows the district court to stay the proceedings

17 pending an appeal from its refusal to compel arbitration if the court finds that the

18 motion presents a substantial question for the court of appeal to consider.  <u>See</u> <u>Britton</u>

19 <u>v. Co-op Banking Group</u>, 916 F.2d 1405, 1412 (9th Cir. 1990).  Courts generally

20 consider four factors when determining whether to grant a stay pending the appeal of

21 a civil order: first, whether the applicant has made a strong showing that he is likely to

22 succeed on the merits; second, whether the moving party will be irreparably injured

23 absent a stay; third, whether a stay will substantially injure the opposing party; and

24 fourth, whether the public interest favors a stay.  <u>See</u> <u>Id.</u> (approving <u>C.B.S.</u>, 716 F. Supp.

25 at 309 (quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1986)) [hereinafter "<u>Hilton</u>

26 test"]).  The decision to stay proceedings is a "proper subject for the exercise of

27 discretion by the trial court."  <u>Britton</u>, 916 F.2d at 1412.

28 ///

07cv0120W

1   **III.**   **DISCUSSION**

2     **A.**   **Likelihood of Success, or Substantial Legal Questions**

3         Defendants argue that their pending interlocutory action involves serious legal

4   questions which carry a substantial likelihood of success on appeal.  (*Defs.' Mot.* 4–6.)

5   Plaintiffs, on the other hand, argue that this Court's prior order refusing to compel

6   arbitration was "not a close call" and was based on a certain determination of the facts.

7   (*Pls.' Opp'n* 6–8.)

8         To satisfy the first <u>Hilton</u> factor, a movant need not show a probability of success

9   on appeal.  <u>See</u> <u>C.B.S.</u>, 716 F.Supp. at 309–10 (admitting that it would be tough for

10  moving parties to persuade the trial court that it was wrong and would probably be

11  reversed on appeal).  Instead, a substantial case on the merits exists if there is a serious

12  legal question to be answered by the court of appeal and the "balance of equities" of the

13  final three factors strongly weigh in favor of granting a stay.  <u>Id.</u> at 310 (citing <u>Wash.</u>

14  <u>Area Transit Comm'n v. Holiday Tours, Inc.</u>, 559 F.2d 841, 842 (D.C. Cir. 1977)).

15        Although the Court possessed adequate information on which to consider

16  Defendants' renewed motion, factual clarity alone is not sufficient to conclude that

17  serious legal questions were not involved in the decision to refuse to compel arbitration.

18  To the contrary, the Court determined that the December 2005 emails represented a

19  stand-alone agreement that replaced many of the specifics and protections of prior,

20  formalized contracts.  This determination profoundly impacted the parties' dispute

21  resolution rights and the efficacy of the 2002 and 2003 Agreements.  The Court can

22  think of few more serious legal issues than whether or not a dispute, serious enough as

23  to be beyond informal mending, is precluded from formal judicial resolution.  Thus,

24  under <u>C.B.S.</u> and the balance of equities (discussed below), a substantial legal question

25  exists favoring the temporary stay of this litigation.

26  ///

27  ///

28  ///

07cv0120W

**B.     Defendants Will Suffer Irreparable Harm If Stay Is Not Granted**

Defendants argue that the expense involved in litigating this suit while appealing the Court's refusal to compel arbitration constitutes irreparable harm.  (*Defs.' Mot.* 7.) In response, Plaintiffs contend that Defendants will eventually have to incur some of the litigation costs on certain issues.  (*Pls.' Opp'n* 8–9.)

If a party must undergo the expense and delay of trial before being able to appeal a refusal to compel arbitration, the advantages of arbitration—speed and economy—are lost forever.  Alascom, Inc. v. ITT North Elec. Co., 727 F.2d 1419, 1422 (9th Cir. 1984).  Although monetary expenses incurred in litigation are normally not considered irreparable, it is a unique situation when these expenses are incurred pending an appeal of an order refusing to compel arbitration.  See, e.g., Mundi v. Union Sec. Life Ins. Co., No. CV-F-06-1493 OWW/TAG, 2007 U.S. Dist. LEXIS 64012 at *13–14 (E.D. Cal. August 15, 2007) (citing C.B.S., 716 F. Supp. at 310).  Thus, when appealing the denial of a motion to compel arbitration, courts have considered ongoing litigation expenses as irreparable injury.  Id.

If this litigation proceeds, Defendants will be forced to incur costs that would defeat the important, cost-limiting purpose of arbitration agreements.  Thus, this Court determines that, in the limited context of an interlocutory appeal of the order refusing to compel arbitration, Defendants would be irreparably harmed if the Court did not enter a stay.

**C.     Plaintiffs Will Not Be Prejudiced By a Stay**

Defendants argue that Plaintiffs will not suffer substantial harm should a stay issue because the dispute is narrow and the relationship between the parties has ended, i.e. neither party will continue to be harmed by the other during the pendency of the stay. (*Defs.' Mot.* 7–8.)  Plaintiffs contend that the patent issues require immediate attention, and that fairness dictates that the case proceed without delay.  (*Pls.' Opp'n* 9.)

When a defendant appeals an order refusing to compel arbitration, the general

07cv0120W

1    disadvantage to plaintiff caused by delay of proceedings is usually outweighed by the

2    potential injury to defendant from proceeding in district court during pendency of

3    appeal.  See C.B.S., 716 F. Supp. at 310.  However, a plaintiff may be able to show

4    prejudice by citing particular witnesses or documents that may be adversely affected by

5    a stay.  See id.

6         In this case, Plaintiffs generally allege that a stay may adversely affect the

7    collection of evidence from non-parties "whose documents could be lost and whose

8    memories may dim...."  (Pls.' Opp'n 9.)   However, Plaintiff has not shown with

9    particularity any prejudice that outweighs the potential injury to Defendant from

10   continuing the litigation while the interlocutory appeal is pending.  The Ninth Circuit

11   has set a briefing schedule and there is no reason to suspect that the appeal will not be

12   diligently prosecuted.  Thus, Plaintiffs have not met Hilton's prejudice requirement.

13

14        **D.    The Requested Stay Serves the Public Interest**

15        Defendants argue that a stay serves the public interest because it would promote

16   judicial efficiency and economy.  (Defs.' Mot. 8–9.)  In reply, Plaintiffs argue the public

17   interest in cases proceeding to trial promptly and efficiently.  (Pls.' Opp'n 9–10.)

18        Policies underlying arbitration law stress the importance of judicial efficiency and

19   economy.  See, e.g., A.G. Edwards, 967 F.2d at 1404 n.2 (identifying the "strong federal

20   policy encouraging arbitration as a "prompt, economical and adequate" method of

21   dispute resolution); Bradford-Scott Data Corp. v. Physician Computer Network, Inc.,

22   128 F.3d 504, 506 (7th Cir. 1997) ("The worst possible outcome [in denying a motion

23   to compel arbitration] would be to litigate the dispute, to have the court of appeals

24   reverse and order the dispute arbitrated, to arbitrate the dispute, and finally to return

25   to court to have the award enforced.").  Moreover, as is the circumstance whenever two

26   courts exercise jurisdiction over the same case, courts should seek to reduce the risk of

27   inconsistent rulings.  See Bradford-Scott, 128 F.3d at 505 ("Continuation of proceedings

28   in the district court largely defeats the point of the appeal and creates a risk of

inconsistent handling of the case by two tribunals.").

It is clear that disputes about whether or not parties must submit to arbitration take place against a backdrop of policies encouraging arbitration and the preservation and integrity of judicial resources.  Here, continuing to litigate in this Court during the pendency of the appeal would undermine both policies because of the risk of redundant or inconsistent actions.  Accordingly, the public interest weighs in favor of a stay.

## IV.   CONCLUSION

The Court's previous order refusing to compel arbitration involved substantial and serious legal questions.  Because the balance of equities and public interest strongly favor a stay of the litigation pending the outcome of Defendants' interlocutory appeal, the Court hereby **GRANTS** Defendants' motion to stay until the appeal is decided. (Doc. No. 61.)

**IT IS SO ORDERED.**

DATED:  January 29, 2008

_____
Hon. Thomas J. Whelan
United States District Judge

07cv0120W